Jaron R. Pensinger (*pro se*)
201 I St. NE, APT 1224
Washington, D.C. 20002
717-753-5426
pensingerjaron38@icloud.com

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JARON R. PENSINGER,<br><br>      Plaintiff,<br><br>vs.<br><br>MADISON A. MINELLI,<br><br>      Defendant | Civil Action No.   Case: 1:20–cv–00967   JURY DEMAND<br>Assigned To : Unassigned<br>Assign. Date : 4/13/2020<br>Description: Pro Se. Gen. Civ. (F–DECK) |

## <u>COMPLAINT</u>

Plaintiff Jaron R. Pensinger files this complaint against Defendant Madison A. Minelli, and states as follows:

### <u>NATURE OF THE ACTION</u>

1.      This is a defamation action brought by Mr. Pensinger against Madison A. Minelli, which arises out of the Defendant's malicious campaign of making knowingly false statements about Plaintiff and attempting to tarnish his reputation.

2.      In attempting to conceal the fact she physically assaulted Mr. Pensinger on numerous occasions and wanting to "get the first word in" with law enforcement, Ms. Minelli falsely accused and knowingly fabricated horrific statements about how Mr. Pensinger "raped" and "sexually assaulted" her. The Defendant maliciously spread these false and defamatory allegations in various ways to employees of Georgetown

1



RECEIVED

APR 13 2020
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

University, other Georgetown University students, her family, friends of Mr. Pensinger, and the DC Superior Court.

3.      But romantic text messages and emails from Defendant to Mr. Pensinger in the immediate days after the alleged "rape", along with Georgetown University dormitory swipe in logs, alibi witnesses, and a finding by Judge McCabe of the DC Superior Court favoring Mr. Pensinger all reveal that Mr. Pensinger ***never*** raped the Defendant and in fact was ***never*** even with her on the night she alleges the rape occurred. There is simply no evidence that Mr. Pensinger ever sexually assaulted Defendant. Accordingly, there is no "truth defense" to the defamation claim here.

4.      Mr. Pensinger brings this suit to vindicate his rights and set the record straight.

## THE PARTIES

5.      Plaintiff Jaron R. Pensinger is a natural person, a citizen of the United States, and a resident of the District of Columbia. Mr. Pensinger at all relevant times was over the age of 18. Mr. Pensinger enrolled at Georgetown University as an undergraduate student in the fall of 2017.

6.      Defendant Madison A. Minelli is a natural person, a citizen of the United States, and resident of the state of Florida. Defendant at all relevant times was over the age of 18. Defendant enrolled at Georgetown University as an undergraduate student in the fall of 2018.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1), because Mr. Pensinger resides in the District of Columbia, and the

Defendant resides in the state of Florida. The amount in controversy exceeds the statutory minimum of $75,000.00.

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) & (b)(2), in that the Defendant disseminated the defamatory statements alleged herein within this District.

## FACTUAL BACKGROUND

### Mr. Pensinger Dedicates Himself to Being an Upstanding Student

9.      Mr. Pensinger was born and raised in Chambersburg, Pennsylvania. In 2017 he graduated from Chambersburg Area Senior High School. At Chambersburg Area Senior High School Mr. Pensinger was an Honor Roll student, named a National AP Scholar, awarded Rotary Club Student of the Month, and participated in Franklin County Youth Court.

10.     Mr. Pensinger was accepted and given a full scholarship to attend Georgetown University in December 2016 after applying early action to Georgetown University.

11.     Upon Mr. Pensinger's acceptance to Georgetown, he was named a Karches' Scholar by the University administration for his outstanding academic achievement and commitment to community service.

12.     In the summer of 2017, Mr. Pensinger took part in Georgetown University's esteemed Community Scholar's Program.

13.     In the fall of 2017, Mr. Pensinger began as an undergraduate student in the Edmund A. Walsh School of Foreign Service at Georgetown University.

14.     In the summer of 2018, Mr. Pensinger founded Georgetown University's first club wrestling team.

15.     In December of 2018, Mr. Pensinger made the Georgetown University's Dean's List and was accepted to study abroad in St. Petersburg, Russia for the summer of 2019.

16.     Before Defendant's false and defamatory statements, Mr. Pensinger had a flawless student conduct record at Georgetown University.

17.     Mr. Pensinger has no criminal history and has never been arrested.

### Mr. Pensinger and the Defendant's Relationship

18.     Mr. Pensinger met the Defendant in September 2018 at Georgetown University. Mr. Pensinger was the treasurer of the Georgetown University Moot Court Club when Defendant joined the club as a general body member.

19.     In December 2018 Mr. Pensinger and the Defendant began a romantic relationship which lasted up through April 2019.

20.     During the course of Mr. Pensinger's and Defendant's romantic relationship, Mr. Pensinger resided at the McCarthy Hall dormitory—room 718—on the Georgetown University campus.

21.     During the course of Mr. Pensinger's and Defendant's romantic relationship the Defendant resided off Georgetown's campus with her grandmother at 3620 Prospect St. NW, Washington, D.C. 20007. This residence is a condominium and is not owned by Georgetown University.

22.     During the course of their relationship the Defendant and her family did the following for Mr. Pensinger:

4

    a.  Purchased plane tickets for Mr. Pensinger to visit and stay with the Defendant and her mother at their place of residence in Jupiter, Florida during Georgetown University's winter and spring college breaks;

    b.  Purchased Mr. Pensinger an iPhone 10 and placed him on their family phone plan at the beginning of February 2019.

23.     From the beginning of January, 2019 up through the end of February, 2019—at the Defendant's insistence and invitation—Mr. Pensinger slept over at the Defendant's condominium off campus in Georgetown regularly at most 5-6 times a week. In March, 2019 Mr. Pensinger began limiting his time with the Defendant due to the following:

    a.  Defendant began acting erratically and revealed that she had a history of severe mental health disorders—hence Defendant's need to be under the care of a psychiatrist and therapist during their relationship. The Defendant was prescribed various antidepressant medications;

    b.  The Defendant would obsessively talk about how she allegedly was raped in the past by her ex-boyfriend in high school and how she was allegedly sexually abused by her father as a child;

    c.  Due to her low self-esteem, the Defendant would become extremely jealous whenever Mr. Pensinger spoke with women who were physically attractive;

    d.  Defendant exhibited mood swings, quickly shifting from excited euphoria to depression.

    e.  Mr. Pensinger asked the Defendant if he could begin sleeping at his dormitory more and staying less at the Defendant's condominium because Mr.

Pensinger's academics were beginning to suffer due to the amount of time spent with the Defendant. The Defendant told Mr. Pensinger that she needed him to stay with her and if he began staying at his dormitory more, that she would feel abandoned and would commit suicide if he did not continue to stay with her as often. Mr. Pensinger asked the Defendant's mother for advice on how to handle the situation and her mother said that the Defendant needed to learn how to be more independent;

f.  Defendant tried to overdose on her antidepressant medication in front of Mr. Pensinger and he was forced to remove the pills from her hand and hide them temporarily until Defendant's symptoms calmed;

g.  Defendant would send Mr. Pensinger text messages saying that she wanted to run away from home, commit suicide, that she didn't want to be on Earth anymore, that she was tired of the verbal abuse that she suffered from her mother and grandmother, among other disturbing messages.

h.  When Mr. Pensinger would disagree with the Defendant, she would sometimes physically assault him in bouts of anger.

i.  On at least 4 different occasions between February, 2019 and April, 2019 the Defendant physically assaulted Mr. Pensinger. Mr. Pensinger has text messages from the Defendant of her admitting that she physically assaulted him, transcripts of court testimony where Defendant admits on court record that she physically assaulted him, and photographs of injuries Mr. Pensinger sustained from Defendant's assaults.

**Mr. Pensinger is Vindicated of Any Wrongdoing and Wins Civil Protection**

**Order Against Defendant**

24.     From September 11th through September 13th, 2019 Mr. Pensinger and
Defendant had a civil protection order trial at the DC Superior Court in which the
Honorable Judge McCabe presided. Both Mr. Pensinger and Defendant requested
orders for civil protection against the other. Mr. Pensinger made his request on the
basis that he had been physically assaulted numerous times by Defendant. Defendant
made her request based on the false accusations that Mr. Pensinger had sexually
assaulted and stalked her.

25.     During the trial, Mr. Pensinger represented himself *pro se* and Defendant
was represented by Steven Vinick of Stein Sperling and Maritza Carmona of Joseph
Greenwald & Laake.

26.     During Mr. Pensinger's opening argument in the trial, Defendant and her
counsel voluntarily withdrew her false accusation that Mr. Pensinger had "sexually
assaulted" and "raped" her, but continued with her false accusation of stalking.

27.     On September 13th, 2019 Judge McCabe ruled there to be a civil
protection order against Defendant due to the finding by a preponderance of the
evidence that Defendant physically assaulted Mr. Pensinger on 4 different occasions
between the time period of February 23rd, 2019 and April 2nd, 2019. Defendant was
denied her civil protection order against Mr. Pensinger.

28.     Mr. Pensinger's civil protection order against Defendant—in effect until
September 13th, 2020—requires that she stay at least 100 yards away from Mr.
Pensinger, his home, his workplace, his vehicle and not contact him in any manner

except through counsel. If Defendant were to violate the order, she would face possibly up to 180 days in jail and a thousand dollar fine—among other restrictions.

29.     On September 13th, 2019, in Judge McCabe's court finding, he stated including, but not limited, to the following:

a.  "There was zero evidence in this case that Mr. Pensinger has ever assaulted Ms. Minelli, has ever threatened to harm her, has ever destroyed her property." (***Exhibit A***);

b.  "So, it's not even a close call. The Court does not find that Mr. Pensinger committed the crime of stalking, and I will be denying Ms. Minelli's request for a civil protection order by him, because I have no evidence that he committed a crime." (***Exhibit A***);

c.  "An allegation was made that he had sexually assaulted her eight days earlier. Again, no evidence of that was presented during trial...The evidence that I did see is very much inconsistent with that having happened." (***Exhibit A***);

d.  "Perhaps the evidence that made it fairly not particularly difficult for the Court to find that Ms. Minelli assaulted Mr. Pensinger was that she acknowledged it during her testimony." (***Exhibit A***);

e.  "Clearly the Court found Mr. Pensinger to be a credible witness and a more credible witness than Ms. Minelli." (***Exhibit A***).

**Mr. Pensinger Never Saw the Defendant**

**on the Day He Allegedly "Raped" Her**

30.     At the beginning of April, 2019 Defendant asked Mr. Pensinger to have a 3-way phone call with her and her therapist.

31.     Mr. Pensinger and the Defendant—along with her therapist—agreed that a 3-way phone call would take place on April 5th, 2019 at 2:30pm.

32.     Mr. Pensinger slept in his dormitory on the evening of April 4th, 2019 and had class the morning of April 5th, 2019. Mr. Pensinger—from the confines of his dorm room—spoke over the phone with the Defendant and her therapist at 2:30pm on April 5th, 2019. The phone call lasted approximately 30 minutes.

33.     At the end of their phone call with Defendant's therapist, Mr. Pensinger requested if he could have some space from the Defendant and requested they take a one-week break in their romantic relationship whereby no contact would be permitted between him and the Defendant.

34.     The Defendant, although upset at Mr. Pensinger wanting a break in the relationship, agreed to the request—along with her therapist's approval—that they would not contact each other for a period of one week up through April 12th, 2019.

35.     Thus, after the 3-way phone call ended on April 5th, 2019, Mr. Pensinger immediately blocked the Defendant's telephone number so that he could not receive texts and calls from her.

36.     Mr. Pensinger then spent the rest of April 5th, 2019 studying in the library and then with friends of his who also attended Georgetown University. During that evening him and his friends went out to dinner, attended an on-campus comedy show, and went to a friend's birthday party.

37.     Mr. Pensinger *never* saw the Defendant on April 5th, 2019 and the last they spoke over the phone was at approximately 3pm on April 5th, 2019 on the call with her therapist.

38.     Upon information and belief, Defendant was in the confines of her condominium located at 3620 Prospect St. NW, Washington, D.C. 20007 the evening of April 5th, 2019.

39.     Furthermore, according to Georgetown University dormitory swipe in records—a safety and security mechanism designed to ensure only students and staff enter Georgetown's dormitories—Defendant ***never*** swiped into McCarthy Hall on April 5th, 2019 where Mr. Pensinger resided—indicating that she never was at his dormitory.

40.     Yet a mere eight days later, on April 13th, 2019 and despite ***no evidence*** that Defendant and Mr. Pensinger were together on April 5th, 2019, the Defendant knowingly falsified a report to Georgetown University Police that she was "sexually assaulted" by Mr. Pensinger in his dorm room within McCarthy Hall around 9:30pm on April 5th, 2019. ***Exhibit B.*** This false and defamatory statement was made with malicious intent in an effort to "get the first word in" to Georgetown University Police and to conceal the fact she had physically assaulted Mr. Pensinger.

**Communication between Mr. Pensinger and**

**Defendant after April 5th, 2019**

41.     On Saturday, April 6th, 2019 the Defendant reached out to Mr. Pensinger over social media indicating that she was upset at them not being able to talk—since Mr. Pensinger still had Defendant's phone number blocked pursuant to their agreement with her therapist. Mr. Pensinger did not engage with the Defendant.

42.     On Sunday, April 7th, the Defendant reached out to Mr. Pensinger again over social media indicating that she was upset at them not being able to talk. Mr. Pensinger again did not engage with the Defendant.

43.     On Monday, April 8th, 2019 Defendant sent an email to Mr. Pensinger's Georgetown University email account which included the following:

a.   "I have tried to text you a few times and it appears as if I have been blocked from texting and calling you. I know you wanted to not talk for a week but I did not know that entailed blocking and unfollowing me." (***Exhibit C***);

b.   "I just want you to know that I really miss you." (***Exhibit C***);

c.   "I have had anxiety about seeing you in class tomorrow. I hope that you will still sit next to me and be cordial." (***Exhibit C***);

d.   "I don't know if this is hard for you or not because I haven't heard from you, but it has been a lot on me. I went from talking and being with you all day every day to now being blocked so I cannot talk to you and not seeing you at all. You were my best friend and my heart is so sad and heavy over this." (***Exhibit C***).

44.     Mr. Pensinger then responded to this email on the evening of April 8th, 2019 and proceeded to unblock the Defendant's phone number that evening. Full communication between him and the Defendant resumed.

45.     Throughout the following five days up through April 13th, 2019, Mr. Pensinger and Defendant regularly communicated and saw each other. The Defendant sent romantic messages and would call Mr. Pensinger pet names such as "Bubby" during this time. Defendant asked Mr. Pensinger on April 9th, 2019 if she could spend

the night with him in his dormitory room—the very same dormitory room that she falsely alleged that Mr. Pensinger sexually assaulted her in four days prior.

46.     On April 10th, 2019—over text message—Defendant started to complain again to Mr. Pensinger about how her *ex-boyfriend* in high school allegedly *raped* her and how she was upset at her female friends from high school who were still friends with him. Some communication between Defendant and Mr. Pensinger on April 10th, 2019 includes the following:

> a.   Defendant stating over text, "I just could never imagine being friends with a guy [Defendant's ex-boyfriend] and his girlfriend when I knew he *raped* one of my best friends [Defendant]. *That's horrible*.";
>
> b.   Mr. Pensinger replying over text says, "*I couldn't imagine that either*, some people just have no empathy for others and only care about themselves. It's really sad they are like that." "*You deserve better.*"

47.     Mr. Pensinger was in fact empathizing with Defendant on April 10th, 2019 regarding Defendant's allegation that her *ex-boyfriend raped* her. Defendant knew that Mr. Pensinger had *never* "raped" or "sexually assaulted" her, hence why Defendant was looking for empathy from Mr. Pensinger regarding her past alleged rape, *not caused* by Mr. Pensinger.

48.     On the evening of Friday, April 12th Mr. Pensinger and Defendant attended a concert together taking place in the McDonough Arena on the Georgetown University campus. Mr. Pensinger's friends—also Georgetown undergraduate students—attended said concert with them. Mr. Pensinger and Defendant took photographs of themselves at said concert.

49.    On the day of April 13th, 2019, Mr. Pensinger and Defendant went on a river cruise on the Potomac River together, went to numerous National monuments, went out for dinner, went for ice cream, and then went back to Mr. Pensinger's dormitory room at McCarthy Hall. Mr. Pensinger and Defendant have timestamped pictures with each other from this day doing these activities.

**Defendant Falsely Reports to Georgetown University Police that Mr. Pensinger "Raped" Her**

50.    Upon Mr. Pensinger and Defendant's arrival to Plaintiff's dormitory room in McCarthy Hall on the evening of April 13th, 2019 a verbal dispute initiated by Defendant arose. Defendant called the Georgetown University Police falsely alleging that Mr. Pensinger was threatening to commit suicide. Though Mr. Pensinger ***never*** threatened to commit suicide.

51.    The Georgetown University Police arrived and separated Defendant and Mr. Pensinger to conduct individual interviews. Mr. Pensinger made it abundantly clear to the University police that he was ***not*** suicidal in any way. No ambulance, medical attention, or DC Metropolitan Police was called for Mr. Pensinger.

52.    Upon information and belief, Defendant proceeded to falsely state to Officer Dylan Floyd of the Georgetown University Police in her interview that she was "raped" eight days prior by Mr. Pensinger on April 5th, 2019. Some of Defendant's false and defamatory statements to Officer Floyd include the following:

a.    "On April 5th, 2019 at approximately 2130 Mr. Pensinger sexually abused me." (***Exhibit B***);

b. "Mr. Pensinger then forced his penis into my vagina and grabbed my breasts. I then screamed and told him to stop but he continued thrusting and engaging in vaginal intercourse with me." (***Exhibit B***);

c. "Mr. Pensinger stated, 'If you report me to the police as a rapist, I will tell them that you physically abuse.'" (***Exhibit B***);

d. "After I was raped, I had visible markings of forced trauma between my legs on my upper thighs… I was bleeding from my vagina after I was sexually assaulted on April 5th." (***Exhibit B***);

e. "The sexual abuse has happened at least three times…" (***Exhibit B***).

53.     These knowingly false statements to Officer Floyd were made by Defendant maliciously and were made to "get the first word in" so the police wouldn't believe Mr. Pensinger that he was the victim of physical assaults. Defendant wanted to conceal the fact that she was the ***assailant*** and not Mr. Pensinger.

54.     The Defendant ***knew*** she was never with Mr. Pensinger on April 5th, 2019 and ***knew*** Mr. Pensinger never raped her.

55.     Mr. Pensinger ***never*** told Defendant that "If you report me to the police as a rapist, I will tell them that you physically abuse." Mr. Pensinger had in fact been physically assaulted by Defendant on numerous occasions. Defendant fabricated her statement in an effort to ***conceal*** the fact she had physically assaulted Mr. Pensinger.

56.     Defendant ***never*** sustained bruising and vaginal bleeding because of Mr. Pensinger and ***never*** sought medical care or called 911 on or any time after April 5th, 2019 for such. These are false and defamatory statements made to imply that Mr. Pensinger had caused physical harm to Defendant.

14

57.     Towards the end of Mr. Pensinger's and Defendant's interviews with Georgetown University Police the night of April 13th, 2019, Mr. Pensinger was informed that Georgetown University Police were going to issue a no contact order between him and Defendant starting the following morning. Mr. Pensinger was not given a reason as to why the no contact order was issued and was not initially aware that Defendant had falsely accused him of "rape". Mr. Pensinger asked the Georgetown University Police if he could send a final text to Defendant and he was told that he could do so since the order was not yet put into effect—and wasn't going to be until early the following morning.

58.     Upon information and belief, the reason that Georgetown University Police issued the no-contact order between Mr. Pensinger and Defendant was due to Defendant's false accusation that Mr. Pensinger "raped" and "sexually assaulted" her on April 5th, 2019.

59.     After Defendant's interview with Georgetown University Police, she returned back to her off-campus condominium the night of April 13th, 2019 while Mr. Pensinger remained in his dorm room at McCarthy Hall.

60.     That night of April 13th, 2019 and into the very early morning of April 14th, 2019—before the university no contact order was officially issued—Mr. Pensinger and Defendant exchanged texts and spoke on the phone for approximately two hours. Defendant made no reference to having been sexually assaulted or mentioned that she had accused Mr. Pensinger of such. Some text message statements from Defendant include, "…I need to have some space so you can no longer hurt me *unintentionally*… I will love you forever… I love you more than anything in the

15

world." The last time Mr. Pensinger and Defendant spoke to each other was over the phone on April 14th, 2019 at approximately 3:00am.

61.     On the morning of April 14th, 2019 at approximately 10:15am, Mr. Pensinger received an email from Sgt. Fred Johnson of the Georgetown University Police stating that Georgetown University was ordering there to be no contact between Mr. Pensinger and Defendant.

62.     Upon information and belief, on the morning of April 14th, 2019, Defendant also received an email from the Georgetown University Police stating that she was to not contact Mr. Pensinger in any way—the no contact order was mutual.

63.     On April 15th, 2019 Mr. Pensinger made a police report to the Metropolitan Police Department of Washington, D.C. to report that he had been physically assaulted by Defendant Minelli in the preceding weeks. At this time Mr. Pensinger was not yet aware that Defendant falsely stated to the Georgetown University Police that he "raped" and "sexually assaulted" Defendant. Mr. Pensinger made the police report to MPD because he wanted to get the *truth* out about Defendant physically assaulting him.

64.     Upon information and belief—in addition to Mr. Pensinger's reputation being tarnished—Defendant's false and defamatory statements have caused Mr. Pensinger to be suspended from Georgetown University until the fall of 2021, causing immense special harm to Mr. Pensinger.

**Defendant Falsely Accuses Mr. Pensinger in Civil Protection Order Petition**

65.     Upon information and belief, on April 30th, 2019 Defendant—with malicious intent—went to the DC Superior Court's Domestic Violence Division and

knowingly made the following false and defamatory statements within a request for civil protection against Mr. Pensinger:

    a.   "On or about April 5, 2019 at or around 9:00 p.m. at Georgetown University, McCarthy Hall, Apt. 718, Washington, DC 20057, Respondent [Mr. Pensinger] made sexual advances on Petitioner [Defendant]. Petitioner told Respondent repeatedly that she did not want to have sex with Respondent. Respondent physically forced Petitioner to have sex with him. Petitioner sustained bruising and vaginal bleeding. Respondent told Petitioner that if she told anyone about the incident he would lie and say that Petitioner had physically abused him. Petitioner feared for her safety." (***Exhibit D***);

    66.    The Defendant ***knew*** she was never with Mr. Pensinger on April 5th, 2019 and ***knew*** Mr. Pensinger never raped her. She falsified such statement with malicious intent to give more credibility to her false accusation of sexual assault and to further try and conceal her physical assaults against Mr. Pensinger.

    67.    Mr. Pensinger ***never*** told Defendant that "if she told anyone about the [rape] he would lie and say that the [Defendant] had physically abused him." Mr. Pensinger had in fact been physically assaulted by Defendant on numerous occasions. Defendant maliciously fabricated her statement in an effort to ***conceal*** the fact she had physically assaulted Mr. Pensinger.

    68.    Defendant ***never*** sustained bruising and vaginal bleeding because of Mr. Pensinger and ***never*** sought medical care or called 911 on or any time after April 5th, 2019 for such. These are false and defamatory statements made to imply that Mr. Pensinger had caused physical harm to Defendant.

17

**Defendant Maliciously Files a Title IX Complaint through Georgetown University**

69. Upon information and belief, on May 9th, 2019 Defendant sent an email to the Georgetown University Office of Student Conduct with a Title IX complaint falsely accusing Mr. Pensinger of "sexual assault" and "rape". ***Exhibit E.*** False and defamatory statements from the complaint include the following:

  a. "On or around the early evening of April 5th, 2019, Jaron and I were in his dorm room, McCarthy Hall 718, when I was sexually assaulted by Mr. Pensinger." (***Exhibit E***);

  b. "I had substantial bleeding and bruising on my inner right thigh as a result." (***Exhibit E***);

  c. "There were other occasions during the second-half of March when Jaron sexually assaulted me in which I had to defend myself, but this one was the most vivid and impactful to me." (***Exhibit E***);

  d. "[Mr. Pensinger] saying that if I [Defendant] told anyone about it [rape] that he would say I physically abused him as retaliation." (***Exhibit E***).

70. Defendant ***never*** sustained bruising and vaginal bleeding because of Mr. Pensinger and ***never*** sought medical care or called 911 on or any time after April 5th, 2019 for such. These are false and defamatory statements made to imply that Mr. Pensinger had caused physical harm to Defendant.

71. There were ***no*** other occasions where Mr. Pensinger had sexually assaulted Defendant. These statements are false and defamatory.

72.     Mr. Pensinger *never* told Defendant that "if she told anyone about it [rape] that he would lie and say [Defendant] physically abused him as retaliation." Mr. Pensinger had in fact been physically assaulted by Defendant on numerous occasions. Defendant fabricated her statement in an effort to *conceal* the fact she had physically assaulted Mr. Pensinger.

73.     In August, 2019 Defendant voluntarily withdrew her Title IX complaint falsely accusing Mr. Pensinger of "sexual assault" and "rape" before any official Title IX investigation of him took place.

**Defendant Verbally Spreads False Accusation of Rape to Many Others**

74.     Upon information and belief, in between the time period of April 13th, 2019 and December 31st, 2019 Defendant disseminated verbally the false accusation that she had been "raped" and "sexually assaulted" by Mr. Pensinger to a large number of other people, including but not limited to the following: other Georgetown University students, Georgetown University administrators, her mother Elizabeth Minelli, her grandmother Carole Minelli, and friends of Mr. Pensinger. These statements were false and defamatory and made with malicious motive to tarnish Mr. Pensinger's reputation. The false statements were further made to *conceal* the fact that Defendant had physically assaulted Mr. Pensinger on numerous occasions.

**The Defendant Harmed Mr. Pensinger**

75.     As a result of the Defendant's false and defamatory statements, Mr. Pensinger's reputation has been significantly and irreparably harmed.

76.     Upon information and belief, Mr. Pensinger has lost valuable time away from his education, employment opportunities, and other business opportunities as a result of the Defendant's false and defamatory statements.

77.     Also Mr. Pensinger has undergone medical treatment and counseling for the anxiety and depression he has suffered as a result of the Defendant's false and defamatory statements.

## FIRST CAUSE OF ACTION

### (LIBEL *PER SE*)

78.     Mr. Pensinger realleges and incorporates by this reference Paragraphs 1 through 77 as though fully set forth herein.

79.     As described in the preceding paragraphs, Defendant made false, libelous statements concerning Mr. Pensinger, including but not limited to the following:

a.     Within Defendant's civil protection order petition filed against Mr. Pensinger filed on April 30th, 2019, in which Defendant wrote: "On or about April 5, 2019 at or around 9:00 p.m. at Georgetown University, McCarthy Hall, Apt. 718, Washington, DC 20057, Respondent [Mr. Pensinger] made sexual advances on Petitioner [Defendant]. Petitioner told Respondent repeatedly that she did not want to have sex with Respondent. Respondent physically forced Petitioner to have sex with him. Petitioner sustained bruising and vaginal bleeding. Respondent told Petitioner that if she told anyone about the incident he would lie and say that Petitioner had physically abused him. Petitioner feared for her safety." (*Exhibit D*);

20

b.  Defendant's email to Georgetown University's Office of Student Conduct
on May 9th, 2019 enclosing a Title IX complaint against Mr. Pensinger, in
which Defendant wrote: "I am filing a formal complaint against Mr. Jaron
Pensinger on behalf of me and my family. On or around the early evening
of April 5th, 2019 Jaron and I were in his dorm room, McCarthy Hall 718,
when I was sexually assaulted by Mr. Pensinger… I, soon, began to cry
and scream, urging him to stop… I had substantial bleeding and bruising
on my inner right thigh as a result... There were other occasions during the
second-half of March when Jaron sexually assaulted me in which I had to
defend myself, but this one was the most vivid and impactful to me..."
(*Exhibit E*).

80.    Defendant's false statements are of and concerning Mr. Pensinger, whom
is expressly identified by name.

81.    Mr. Pensinger is a private figure, and the false statements were made with
actual malice, as alleged herein.

82.    The statements are defamatory *per se* because it was written (as opposed
to merely spoken) and has harmed Mr. Pensinger's reputation and lowers him in the
estimation of the community.

83.    The statements are also defamatory *per se* because it charges Mr.
Pensinger with a serious crime and impugns his basic integrity and creditworthiness
as an individual and University student.

84.    The Defendant's statements are false. Mr. Pensinger never sexually
assaulted, raped, or engaged in non-consensual sex with Defendant.

21

85.     Defendant had no privilege to publish the libelous statements.

86.     Defendant acted with actual malice in publishing the libelous statements.

Evidence of actual malice includes the following:

a.   Defendant intentionally disregarded phone records, numerous text messages and the lack thereof showing that Mr. Pensinger was never with Defendant on April 5th, 2019;

b.   Defendant intentionally disregarded numerous text messages and emails where she is romantically and lovingly pursuing Mr. Pensinger in the immediate days after April 5th, 2019, stating such things as "I just want you to know that I really miss you… I guess I just want to know that you miss me, too… Love always, Maddy.";

c.   Defendant intentionally disregarded the fact that she knew she never swiped into Mr. Pensinger's dormitory on April 5th, 2019 and knew she was never was in his dormitory that day;

d.   Defendant actually knew that Mr. Pensinger had never sexually assaulted her on April 5th, 2019, as evidenced by the fact on April 9th, 2019 Defendant sought empathy from Mr. Pensinger about her ex-boyfriend allegedly raping her.

e.   Defendant knew that she was wrong to have physically assaulted Mr. Pensinger on numerous occasions, and in order to conceal the truth of her criminal conduct she falsely accused Mr. Pensinger of sexual assault so that she could be viewed as the victim.

87.     Defendant's libelous statements have injured—and will continue to injure—Mr. Pensinger in at least the following ways:

> a.  By impugning Mr. Pensinger's professional, academic, and personal reputations;
>
> b.  By ascribing to Mr. Pensinger conduct that would adversely affect his fitness for proper conduct as a University student and leader;
>
> c.  By causing Mr. Pensinger to lose precious time away from Georgetown University;
>
> d.  Upon information and belief, by causing Mr. Pensinger to lose employment opportunities and other business opportunities;
>
> e.  By causing Mr. Pensinger to suffer anxiety and depression, and leading him to seeking medical counseling for each condition;
>
> f.  By causing Mr. Pensinger damages in other ways yet to be determined.

88.     Defendant is liable to Mr. Pensinger for compensatory damages arising out of the libel of Mr. Pensinger.

89.     Defendant is liable to Mr. Pensinger for punitive damages because of the wanton and outrageous nature of the libel.

## SECOND CAUSE OF ACTION

### (SLANDER *PER SE*)

90.     Mr. Pensinger realleges and incorporates by this reference Paragraphs 1 through 89 as though fully set forth herein.

91.     As described in the preceding paragraphs, Defendant made false, slanderous statements concerning Mr. Pensinger, including but not limited to the following:

    a.  Defendant's verbal statements to Officer Dylan Floyd of the Georgetown University Police Department on April 13th, 2019, in which Officer Dylan Floyd reported the Defendant saying at least the following:

        i.  "On April 5th, 2019 at approximately 2130 Mr. Pensinger sexually abused me." (*Exhibit B*);

        ii.  "Mr. Pensinger then forced his penis into my vagina and grabbed my breasts. I then screamed and told him to stop but he continued thrusting and engaging in vaginal intercourse with me." (*Exhibit B*);

        iii.  "Mr. Pensinger stated, 'If you report me to the police as a rapist, I will tell them that you physically abuse.'" (*Exhibit B*);

        iv.  "After I was raped, I had visible markings of forced trauma between my legs on my upper thighs… I was bleeding from my vagina

after I was sexually assaulted on April 5th."

(*Exhibit B*);

    v. "The sexual abuse has happened at least

three times…" (*Exhibit B*).

    b. Defendant's verbal statements that Mr. Pensinger had "raped" and

"sexually assaulted" her to a large number of other people, including but

not limited to the following: other Georgetown University students,

Georgetown University administrators, her mother Elizabeth Minelli, her

grandmother Carole Minelli, and friends of Mr. Pensinger.

92.    Defendant's false statements are of and concerning Mr. Pensinger, whom is expressly identified by name.

93.    Mr. Pensinger is a private figure, and the false statements were made with actual malice, as alleged herein.

94.    The statements are defamatory *per se* because it was spoken (as opposed to written) and has harmed Mr. Pensinger's reputation and lowers him in the estimation of the community.

95.    The statements are also defamatory *per se* because it charges Mr. Pensinger with a serious crime and impugns his basic integrity and creditworthiness as an individual and University student.

96.    The Defendant's statements are false. Mr. Pensinger never sexually assaulted, raped, or engaged in non-consensual sex with Defendant.

97.    Defendant had no privilege to speak the slanderous statements.

98.     Defendant acted with actual malice in saying the slanderous statements. Evidence of actual malice includes the following:

a.  Defendant intentionally disregarded phone records, numerous text messages and the lack thereof showing that Mr. Pensinger was never with Defendant on April 5th, 2019;

b.  Defendant intentionally disregarded numerous text messages and emails where she is romantically and lovingly pursuing Mr. Pensinger in the immediate days after April 5th, 2019, stating such things as "I just want you to know that I really miss you… I guess I just want to know that you miss me, too… Love always, Maddy.";

c.  Defendant intentionally disregarded the fact that she knew she never swiped into Mr. Pensinger's dormitory on April 5th, 2019 and knew she was never was in his dormitory that day;

d.  Defendant actually knew that Mr. Pensinger had never sexually assaulted her on April 5th, 2019, as evidenced by the fact on April 9th, 2019 Defendant sought empathy from Mr. Pensinger about her ex-boyfriend allegedly raping her;

e.  Defendant knew that she was wrong to have physically assaulted Mr. Pensinger on numerous occasions, and in order to conceal the truth of her criminal conduct she falsely accused Mr. Pensinger of sexual assault so that she could be viewed as the victim.

99.     Defendant's slanderous statements have injured—and will continue to injure—Mr. Pensinger in at least the following ways:

a.  By impugning Mr. Pensinger's professional, academic, and personal reputations;

b.  By ascribing to Mr. Pensinger conduct that would adversely affect his fitness for proper conduct as a University student and leader;

c.  By causing Mr. Pensinger to lose precious time away from Georgetown University;

d.  Upon information and belief, by causing Mr. Pensinger to lose employment opportunities and other business opportunities;

e.  By causing Mr. Pensinger to suffer anxiety and depression, and leading him to seeking medical counseling for each condition;

f.  By causing Mr. Pensinger damages in other ways yet to be determined.

100.    Defendant is liable to Mr. Pensinger for compensatory damages arising out of the slander of Mr. Pensinger.

101.    Defendant is liable to Mr. Pensinger for punitive damages because of the wanton and outrageous nature of the slander.

## **PUNITIVE DAMAGES**

102.    The actions or omissions by the Defendant set forth in this Complaint demonstrate malice, egregious defamation, and insult. Such actions or omissions by the Defendant were undertaken with either: (1) maliciousness, spite, ill will, vengeance, or deliberate intent to harm Mr. Pensinger; or (2) reckless disregard of the falsity of the speech and its effects on Mr. Pensinger. Accordingly, Mr. Pensinger

27

requests an award of punitive damages and attorneys' fees beyond and in excess of those damages necessary to compensate Mr. Pensinger for injuries.

## PRAYER FOR RELIEF

WHEREFORE, Jaron R. Pensinger prays for relief as follows:

(a) awarding compensatory damages of not less than $5,000,000.00;

(b) awarding Plaintiff punitive damages of $400,000.00;

(c) awarding Jaron R. Pensinger all expenses and costs, including attorneys' fees;

(d) a temporary, preliminary, and permanent injunction against Defendant, enjoining them from committing the wrongdoing against Plaintiff complained of in this action;

(e) a statement submitted to Georgetown University from the Defendant recanting her accusations of sexual assault and rape; and

(f) such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Mr. Pensinger hereby demands trial by jury.

Dated April 13th, 2020                    Respectfully Submitted,


                                          /s/ *Jaron Robert Pensinger*
                                          _____
                                          Jaron R. Pensinger (*pro se*)
                                          201 I St. NE, APT 1224
                                          Washington, D.C. 20002
                                          717-753-5426
                                          pensingerjaron38@icloud.com