UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JARON PENSINGER, | |
|     Plaintiff/Counter-Defendant, | Civil Action No. 20-967 (JMC) |
| v. | |
| MADISON MINELLI, | |
|     Defendant/Counter-Plaintiff. | |

## MEMORANDUM OPINION

Jaron Pensinger, proceeding (mostly) pro se, filed a complaint against Madison Minelli seeking damages for defamation.[1] Ms. Minelli filed several counterclaims. After months of contentious discovery, both Parties filed motions to sanction the other. ECF 73; ECF 74. The Court concludes that Mr. Pensinger has engaged in sanctionable conduct, and that this was part of a pattern of willful refusal to honor his obligations in discovery. Having already sanctioned Mr. Pensinger once for willful disobedience of a court order, the Court determines that the appropriate sanction under the circumstances is to dismiss Mr. Pensinger's pleadings with prejudice.

I.  BACKGROUND

In 2020, Jaron Pensinger filed a Complaint against Madison Minelli alleging that she defamed him when she accused him of rape and sexual assault. ECF 1 ¶¶ 1–2. He is seeking more than five million dollars in damages. *Id.* at 28. In response to Mr. Pensinger's suit, Ms. Minelli

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

filed a Counterclaim seeking damages for sexual battery, intentional infliction of emotional distress, and breach of written contract. ECF 23 (Amended Counterclaim). Mr. Pensinger moved to dismiss Ms. Minelli's counterclaims, ECF 27, and the Court denied that motion on September 26, 2022. *See also* Min. Order, Oct. 19, 2022 (declining to reconsider). Although Mr. Pensinger has at several points briefly retained attorneys to assist him in his case, *see* ECF 17; ECF 67, he has for the most part been proceeding pro se.

On June 23, 2022, the Court issued a Scheduling Order setting an eight-month discovery schedule, with discovery concluding on March 1, 2023. ECF 31 at 1. Mr. Pensinger has consistently asked for more time to complete discovery, over Ms. Minelli's opposition. In the Meet and Confer statement filed by the Parties in advance of the Scheduling Order, Mr. Pensinger requested a discovery period ending on June 1, 2023. ECF 26 at 3. After the Scheduling Order was issued, Mr. Pensinger continued to request extensions of the discovery deadline, generally on the ground that he was pro se and needed more time to either identify or consult with an attorney. *See* ECF 40, 50, 69.[2] With one exception, the Court has denied these requests, reasoning that Mr. Pensinger, as the party who initiated this litigation in full knowledge of his own financial situation and preparedness, should not be permitted to delay the resolution of his claims solely because he would prefer to have extra time to search for a lawyer.[3] On February 8, 2023, the Court granted Mr. Pensinger's motion to extend discovery for thirty days, so that an attorney Mr. Pensinger had recently retained would have an opportunity to get up to speed before the deadline. *See* Min. Order,

---

[2] Mr. Pensinger also filed one motion to stay the case entirely. *See* ECF 52.

[3] The Court also denied Mr. Pensinger's motion to appoint him a lawyer for purposes of the litigation, although it did unsuccessfully attempt to appoint him one for the purposes of mediation. ECF 36 (granting motion to appoint counsel for mediation and denying motion to appoint counsel for all aspects of the case); Min. Order, Jan. 10, 2023 (informing the Parties that the Court had been unsuccessful identifying counsel for purposes of mediation).

Feb. 8, 2023. Although Mr. Pensinger asked that attorney to withdraw soon thereafter, *see* ECF 76, the extended deadline remains in place.

Discovery has been contentious. The Court has spent many hours in hearings while the Parties aired their grievances. There have been multiple motions for sanctions, and the Court has already sanctioned Mr. Pensinger once after finding he had willfully violated its order that he comply with Ms. Minelli's Request for Production of Tangible Things. *See* Min. Order, Dec. 12, 2022. The following are some key events that are relevant to this Opinion.

### A. First Interrogatories, Second Interrogatories, and Request for Admissions

On September 27, 2022, Ms. Minelli served Mr. Pensinger with her first set of interrogatories and a request for admissions. ECF 81-2 at 4. On October 30, 2022—after his responses were already overdue—Mr. Pensinger emailed Defense counsel asking for a thirty-day extension, stating that "I believe that the additional time is warranted given that I am not yet represented by counsel." ECF 84 at 45. Defense counsel agreed to give Mr. Pensinger an extra thirty days to respond to the interrogatories but did not agree to the extension for the admissions. *Id.* at 44. Mr. Pensinger responded that, in his view, he could not respond to the request for admissions without the assistance of counsel. *Id.* at 43. Defense counsel replied that Mr. Pensinger had been pro se for more than two years and that "[i]f you just read the admissions you can easily answer them." *Id.* On November 8, 2022, Defense counsel again emailed Mr. Pensinger, reminding him that the requests for admissions were overdue and should be completed "immediately." ECF 81-2 at 8. Mr. Pensinger, apparently, did not respond.[4]

---

[4] The Court notes that Mr. Pensinger apparently misrepresented this correspondence in a filing that he made the next month, writing that "Mr. Pensinger originally received an extension of time to answer the First Request for Interrogatories and the First Request for Admissions from Ms. Minelli." *See* ECF 60 ¶ 21 (Dec. 11, 2022).

3

On December 22, 2022, Mr. Pensinger emailed Defense counsel, informing him that he had "just finished up with final exams" and promising to complete the outstanding requests by December 31, 2022, "if that is okay." *Id.* at 9. Defense counsel replied: "Please let me be clear: it is not okay to send me answers to the interrogatories and requests for admission by December 31, 2022. The due date to answer and respond was October 27, 2022. A[s] you well know, I agreed to a 30-day extension (to November 26) for ONLY the interrogatories." *Id.* There is nothing in the record to suggest that Mr. Pensinger replied to that email.

Defense counsel served Mr. Pensinger with a second set of interrogatories on December 23, 2022, with responses due January 22, 2022. ECF 81 at 4; ECF 81-6 at 1. Mr. Pensinger did not meet that deadline either. Nor is there any evidence in the record that he reached out to Defense counsel to request an extension. At a hearing on February 15, 2023, Mr. Pensinger admitted to the Court that he had never responded to the first interrogatories, the second interrogatories, or the request for admissions. Mr. Pensinger attempted to justify the missed deadlines by suggesting that the lawyer he had briefly retained in late January had been working on responses. However, Mr. Pensinger has provided no evidence supporting that assertion.

### B. Request for Production of Tangible Things

In his initial disclosures, signed on July 12, 2022, Mr. Pensinger specified the location of numerous documents in his possession that might be used to support his claims or defenses. ECF 64-1 at 9–13. According to Mr. Pensinger's disclosures, most of those documents were located on either his iPhone or his laptop computer. *Id.* Based on that information—as well as expert advice suggesting that Mr. Pensinger had been using a computer application to send text messages to Ms. Minelli and others from false telephone numbers, ECF 42 at 2—Ms. Minelli served Mr. Pensinger with her First Request of Production of Tangible Things (namely, his laptop and iPhone). ECF 42-1. That request was served on Mr. Pensinger on August 7, 2022. *Id.* at 4. In addition, sometime

4

before September 19, 2022, Defense counsel drafted and shared with Mr. Pensinger an examination protocol through which a third-party vendor would extract the data from the devices, examine it, and then provide the Parties with only the data specified in the protocol. *See* ECF 42-4 (the protocol); ECF 42-5 (Mr. Pensinger's response, dated September 19, 2022).

Mr. Pensinger objected to the protocol, and the Court held a hearing to address his concerns on October 25, 2022. *See* ECF 42-5; Min. Order, Oct. 20, 2022 (ordering telephonic conference). At Mr. Pensinger's request, Defense counsel was ordered to strike or narrow several categories of information requested in the protocol. *See* Min. Order, Oct. 25, 2022. Defense counsel was further ordered to identify a vendor located in the Washington, D.C. area, based on Mr. Pensinger's representation that he needed his phone and laptop for school and could not be expected to part with them while they were mailed back and forth to an out-of-state vendor.[5] *Id.*

Defense counsel initially scheduled the extraction for November 17, 2022. ECF 53 at 8. When Mr. Pensinger objected to that date on grounds of insufficient notice, counsel rescheduled the extraction for November 22, 2022—on a Tuesday as Mr. Pensinger had requested. *Id.* at 2. Mr. Pensinger took two actions in response. First, on November 18, 2022, he filed a motion to stay the case, which was denied. ECF 52 (motion); Min. Order, Nov. 28, 2022 (denial). Second, he informed Defense counsel that he could not appear on the newly identified date because he had plans to travel the week of Thanksgiving. ECF 53 at 3. Defense counsel filed a Motion for Sanctions, *id.*, and the Court held a hearing on November 28, 2022. At that hearing, the Court walked Mr. Pensinger through the protocol, taking time to answer Mr. Pensinger's questions about

---

[5] The Court considered and rejected Mr. Pensinger's argument that the request for tangible things should be dropped in its entirety and he be allowed instead to simply produce the documents listed in his disclosures. The Court found that Defense counsel had articulated other, valid reasons for requesting Mr. Pensinger's devices, including the possibility that he had been using various applications to contact various individuals from false numbers, and the relevance of Mr. Pensinger's location data on key dates.

the extraction process and carefully explaining that the Parties would be given access only to the data identified in that document. The Parties agreed to a new extraction date on December 6, 2022, using a third-party vendor who had arranged to meet Mr. Pensinger in person in the District. *See* Min. Order, Nov. 28, 2022. The Court dismissed the Motion for Sanctions as moot but invited Ms. Minelli to refile should Mr. Pensinger fail to appear on the agreed date. *Id*.

On December 6, 2022, Mr. Pensinger met the vendor at the agreed location, but refused to actually hand over his devices. *See* ECF 56 at 3. He then filed a motion with the Court asking for more time before the extraction, so that a lawyer could assist him with the process. *Id.* at 4. He stated that he had not understood the data extraction process. *Id.* Mr. Pensinger also argued that if he was required to submit his devices for examination, Ms. Minelli should be required to do the same (at the Court's expense). *Id*. Defense counsel filed a Second Motion for Sanctions. ECF 57. That motion argued that Mr. Pensinger was pursuing an explicit strategy to delay discovery and to withhold information necessary for Ms. Minelli's defense, that Mr. Pensinger's failure to go through with the extraction had cost Ms. Minelli nearly eight thousand dollars (not including attorney's fees), and that Mr. Pensinger's defiance of the Court's Order showed a disrespect for the process that should be sanctioned. *Id.* at 5–6; *see also* ECF 59.

This time, the Court granted Ms. Minelli's Motion for Sanctions, finding that Mr. Pensinger had willfully violated a court order. *See* Min. Order, Dec. 8, 2022. At the subsequent hearing to determine the nature of the sanctions, Mr. Pensinger represented that he could not afford to pay any monetary sanctions—a position that he still takes today.[6] Defense counsel petitioned the Court

---

[6] On February 7, 2023, Mr. Pensinger submitted to the Court a declaration formally stating that he lacks the resources to pay monetary sanctions. However, the Court notes that at several other points during the litigation (when it suited him) Mr. Pensinger has suggested that he would be willing to pay to travel to attend depositions in person, that he might be able to pay some sanctions after all, and even that he would pay to have the data extracted from his own devices. The Court makes no formal finding as to whether Mr. Pensinger misrepresented his financial status when he

to strike Mr. Pensinger's pleadings. However, the Court found such a severe sanction to be premature, explaining that striking Mr. Pensinger's pleadings would be inappropriate without first putting Mr. Pensinger on notice that it was a possibility. With dismissal and monetary sanctions off the table, the Court decided instead on an adverse jury instruction, under which the Court would inform the jury of Mr. Pensinger's noncompliance and advise the jury that it could use that fact to draw inferences about Mr. Pensinger's credibility and (depending on how discovery played out) the contents of his devices. When confronted with the possibility of an adverse instruction, Mr. Pensinger initially backtracked on his assertion that he could not afford to pay monetary sanctions, but ultimately clarified that doing so would be impossible.

On January 20, 2023, Mr. Pensinger filed a motion attempting to relitigate the Court's decision to impose sanctions, arguing that the sanctions should be lifted because he intended to go through with the forensic examination of his devices at his own expense. ECF 68 at 2. However, when pressed to clarify his financial situation at a hearing on February 8, 2023, Mr. Pensinger once again informed the Court that he could not afford to pay and so would not be moving forward with that proposal.

### C. Mr. Pensinger's deposition

The final events that are relevant here involve Mr. Pensinger's deposition. At a hearing on January 5, 2023, Mr. Pensinger orally represented to the Court (for the first time) that he required certain medical accommodations to be able to appear at a remote deposition. Specifically, Mr. Pensinger stated that he required reduced lighting in the deposition room, frequent breaks, and that he could not look at an electronic monitor for an entire day. Defense counsel agreed to provide the

---

stated that he would be unable to pay monetary sanctions, but the inconsistency of the stories Mr. Pensinger tells to avoid his responsibilities in litigation has been a pattern in this case.

necessary accommodations at Mr. Pensinger's deposition, though the Court clarified to Mr. Pensinger that he could not request a break in the deposition without first answering any pending questions. Shortly after the hearing, Mr. Pensinger substantiated his need for accommodations by providing medical documents to both the Court and to Defense counsel. *See* Min. Order, Jan. 5, 2023. After a brief delay due to the appearance of his new attorney, Mr. Pensinger's remote deposition was scheduled for February 9, 2023, at 9:00 AM. *See* Min. Order, Jan. 27, 2023.

The deposition went badly from the start. Mr. Pensinger and his attorney arrived late, ECF 73 at 1, only to find that Defense counsel had not made the accommodations he promised, *id.* at 2. The Parties contacted the Court, and the Court briefly logged onto the Zoom conference to help the Parties set the brightness of the lights to an acceptable level. ECF 74-2 at 12–13. Once the lighting issue had been settled, the Court asked if either Party needed anything else, and Mr. Pensinger's attorney replied "[n]ot from our end." *Id.* at 15. The Court then reminded Mr. Pensinger that "if he needs a break, he may request one, not while the question is pending and it has to be reasonable with Mr. Oldehoff in the line of questioning." *Id.*

The Parties took a brief break, after which Defense counsel began his questioning. The first substantive question was "True or false: You were in your dormitory room with Madison Minelli at 9:15 p.m. on April 3, 2019." *Id.* at 20–21. Mr. Pensinger replied that he could not remember that time. *Id.* at 21. Defense counsel then revised his question to ask if Mr. Pensinger was in the room with Ms. Minelli at any time on April 3, 2019. *Id.* Rather than answering, Mr. Pensinger again objected to the conditions of the deposition. *Id.* Specifically, he complained that he should be speaking into a telephone and that he should not have to look at the monitor. *Id.* at 21–22. Mr. Pensinger and his attorney asked to go off the record, *id.* at 23, then for a five-minute break, *id.*, and then to call the Court, *id.* at 29. Defense counsel refused those requests, insisting that Mr.

Pensinger first answer the pending question. *Id.* at 24–25, 27–28. Despite those requests, and an instruction from his own lawyer that he answer the question, *id.* at 26, Mr. Pensinger continued to refuse to answer. Defense counsel ended the deposition, *id.* at 38, and both Parties filed motions for sanctions.

\* \* \*

The Court scheduled a hearing on February 15, 2023, to address the cross-motions for sanctions. Min. Order, Feb. 13, 2023. At that hearing, the Court pressed the Parties on the overall progress of discovery. At the conclusion of the hearing, the Court stayed the case to consider whether it should dismiss Mr. Pensinger's pleadings. The Court offered both Parties the opportunity to supplement the record with any evidence of Mr. Pensinger's participation (or lack thereof) in discovery. Min. Order, Feb. 16, 2023. On the day submissions were due—but after Ms. Minelli had submitted her supplemental materials—Mr. Pensinger requested a ten-day extension, representing that he had lost access to his email over the weekend (and suggesting, without providing evidence, that Ms. Minelli had somehow been responsible for this). ECF 82. Although Mr. Pensinger offered no evidence that he had lost access to his email, the Court extended the deadline for six days. *See* Min. Order, Feb. 23, 2023. On the date those submissions were due, Mr. Pensinger filed eighty-five pages of correspondence, which he said documented his participation in discovery.

## II.   LEGAL STANDARD

A district court may, at its discretion, impose sanctions for failure to comply with its orders relating to discovery. Rule 37(b) instructs that a court may, among other things, strike "pleadings in whole or in part," dismiss an "action or proceeding in whole or in part," or render "a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (v), (vi). In addition to other sanctions, "the court must order the disobedient party . . . to pay the reasonable expenses,

including attorney's fees, caused by the [disobedient party's] failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

"[T]he district court has broad discretion to impose sanctions for discovery violations." *Bonds v. District of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996). That said, "[t]he central requirement of Rule 37 is that any sanction must be just." *Id.* at 808. Severe sanctions, such the dismissal of a party's pleadings, "must be a sanction of last resort, to be used only when less onerous methods . . . will be ineffective or obviously futile." *See Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998). Such sanctions are inappropriate unless the litigant's misconduct is accompanied by "willfulness, bad faith, or fault." *Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1458 (D.C. Cir. 1986). Thus, the district court has a duty to explain, as part of any order issuing such severe sanctions, its reasons for doing so—including explaining why it has concluded that a lesser sanction would not do. *Webb*, 146 F.3d at 971.

The D.C. Circuit has described three justifications that may support a district court's decision to dismiss a party's pleadings or to grant default judgment:

> First, the court may decide that the errant party's behavior has severely hampered the other party's ability to present his case—in other words, that the other party has been so prejudiced by the misconduct that it would be unfair to require him to proceed further in the case. Second, the court may take account of the prejudice caused to the judicial system when the party's misconduct has put an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay. And finally, the court may consider the need to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future.

*Id.* "[D]elay that merely prolongs litigation is not a sufficient basis for establishing prejudice." *Washington Metro. Area Transit Comm'n (WMATA) v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 5 (D.C. Cir. 2015). However, that rule does not apply where the conduct represents a "willful"

strategy "to delay for the sake of delay." *Id.* at 6; *see also Butera v. District of Columbia*, 235 F.3d 637, 661 (D.C. Cir. 2001) ("[Discovery sanctions] ensure that a party will not be able to profit from its own failure to comply with the rules."). Indeed, the possibility of severe sanctions serves as a much-needed "deterrent to those parties who choose delay as part of their litigative strategy." *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970).

### III.   ANALYSIS

First, the Court determines that Mr. Pensinger's failure to respond to Ms. Minelli's two requests for interrogatories and her request for admissions was willful, and therefore deserving of sanction. Second, the Court finds that Mr. Pensinger's failure to meet those deadlines is part of a larger pattern of delay and obfuscation that has prejudiced Ms. Minelli's ability to defend herself against his claims, and demonstrated intolerable disrespect for his obligations as a litigant. Third, the Court determines that—particularly given the demonstrated ineffectiveness of lesser sanctions—no sanction short of dismissing Mr. Pensinger's pleadings would remedy or deter his misconduct. Finally, the Court concludes that, although neither Party is without some blame for the early termination of Mr. Pensinger's deposition, neither Party's conduct on that day merits sanction.

Accordingly, the Court grants Ms. Minelli's Motion for Sanctions and denies Mr. Pensinger's Motion for Sanctions. Mr. Pensinger's Complaint is dismissed with prejudice.

### A. Mr. Pensinger's willful failure to meet three separate deadlines to respond to Ms. Minelli's interrogatories or her request for admissions is a sanctionable offense.

The Federal Rules of Civil Procedure require a party to respond to both interrogatories and requests for admissions within thirty days. Fed. R. Civ. P. 33(b)(2), 36(a)(3). A litigant may be sanctioned for failing to meet a deadline that is clearly laid out in the Rules, even in the absence of a court order compelling them to do so. *See Dellums v. Powell*, 566 F.2d 231, 235–36 (D.C. Cir.

1977) ("If parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules."). Here, it is undisputed that Mr. Pensinger failed to meet at least three deadlines—the deadlines to respond to Ms. Minelli's first interrogatories, to respond to her request for admissions, and to respond to her second interrogatories. His replies to Ms. Minelli's first interrogatories and request for admissions are now *several months* overdue. Moreover, Defense counsel has repeatedly reminded Mr. Pensinger of his obligation to respond. Mr. Pensinger has, simply, declined to do so.

Nor does the Court find that this is a circumstance where a pro se litigant was confused about his obligations. For one thing, Mr. Pensinger is not a typical pro se litigant. As the Court has observed in the past, Mr. Pensinger has shown that he is fully capable to drafting competent legal motions and tracking his obligations and deadlines on the docket. *See, e.g.*, Min. Order, Jan. 10, 2023. Based on the email evidence before the Court—including the correspondence that he himself submitted—it appears to the Court that Mr. Pensinger decided that he could simply decline to abide by the Rules, at least until it was more convenient for him—after the conclusion of his exams, perhaps, or when he retained counsel, or maybe once he had succeeded in securing the previously denied extension of the discovery deadline. But discovery rules apply to pro se litigants just as they do to a represented party. Mr. Pensinger had no right to ignore his obligations in this case, particularly as he simultaneously demonstrated that he had plenty of resources to engage in lengthy hearings and make other filings pursuing discovery in the other direction.

Because Mr. Pensinger understood his responsibility to respond to Ms. Minelli's discovery requests but chose to flout that obligation, the Court concludes that he was and is in continued

12

violation of the Rules. Further, the Court finds that Mr. Pensinger's refusal to respond to Ms. Minelli's requests has been willful and should therefore be subject to significant sanctions.

### B. Mr. Pensinger has engaged in a pattern of delay and obfuscation, of which his failure to respond to Ms. Minelli's requests is but one example.

The Court does not consider the above violation in isolation, however. Rather, it analyzes Mr. Pensinger's refusal to respond to Ms. Minelli's discovery requests in the context of his behavior throughout the litigation. The Court has had many opportunities to interact with Mr. Pensinger, both through his filings and during the numerous hearings at which Mr. Pensinger represented himself before the Court. With the benefit of those interactions, and placing Mr. Pensinger's behavior in context, the Court concludes that Mr. Pensinger has shown a pattern of delay, obfuscation, and bad faith that justifies the dismissal of his pleadings.

As an initial matter, Mr. Pensinger's refusal to turn over his devices for data extraction and analysis was a serious transgression, as reflected in the sanctions the Court imposed for that violation. Considered in combination with his refusal to respond to Ms. Minelli's interrogatories and request for admissions, as well as his refusal to answer a pending yes/no question at his deposition, the Court sees Mr. Pensinger's ongoing reticence as part of a pattern of intransigence calculated to deprive Ms. Minelli of information necessary for her defense, or at least to delay the disclosure of that information to run out the clock on discovery. The Court understands that as of today—nearly eight months into discovery—Defense counsel has been unable to obtain any meaningful evidence from Mr. Pensinger at all; indeed, it appears that Defense counsel has been unable even to get Mr. Pensinger to state clearly whether he was in the same room with Ms. Minelli on the night in question. *See* ECF 74-2 at 21–28.

Nor is any of the above the result of Mr. Pensinger's lacking the time or resources to fully engage in the litigation. On the contrary, Mr. Pensinger has consistently appeared for numerous

hearings, often lasting an hour or more. He has submitted multiple, carefully written and well-researched filings in the case. *See, e.g.*, ECF 27-1 (a 52-page motion to dismiss); ECF 39 (moving the Court to issue a subpoena directed to the Georgetown University Office of Student Conduct); ECF 66 at 1 (moving the Court to "allow a psychiatric expert witness to conduct an examination of the Defendant/Counter-Plaintiff, pursuant to Fed. R. Civ. P. 35(a)"). Moreover, it appears that Mr. Pensinger has aggressively pursued discovery *from* Ms. Minelli, even while he steadfastly delayed and refused to produce information necessary to her defense. *See, e.g.*, ECF 47 at 1 (acknowledging that Ms. Minelli had responded to the majority of his requests for production and seeking to compel her to disclose more); Min. Order, Feb. 8, 2023 (documenting Mr. Pensinger's objection to redactions made by Ms. Minelli in text messages between herself and her mother). That imbalance indicates not only bad faith on the part of Mr. Pensinger, but further prejudices Ms. Minelli due to the unfair advantage Mr. Pensinger has gained through one-sided discovery.

Furthermore, Mr. Pensinger has shown a lack of respect for the Court and to his obligations in litigation.[7] Mr. Pensinger insists that he has "has participated in discovery extensively," ECF 82 at 1, insofar as he has aggressively pursued discovery requests of his own and participated in telephonic hearings. But the discovery process is not combat for combat's sake. The Court will not give Mr. Pensinger extra credit for superficially engaging in discovery disputes when he has studiously avoided his substantive responsibilities. On the contrary, the Court has an obligation to take action that will deter both Mr. Pensinger and future litigants from deciding that they can ignore

---

[7] Although the Court is frustrated by the time it has spent supervising discovery in this case, it does not find this has interfered with its ability to manage its docket. Therefore, the Court does not find that Mr. Pensinger's actions have imposed an "intolerable burden" on the Court's resources. *Webb*, 146 F.3d at 971.

14

court orders or from assuming the Federal Rules do not apply to them. Absent a strong sanction, the Court would risk creating a perverse incentive to do exactly that.[8]

Finally, the Court notes that all of the above is made worse by the fact that Mr. Pensinger is the plaintiff in this case. He chose to initiate this litigation in full knowledge of his financial situation and his ability to afford representation. All his obligations in this lawsuit—including the obligation to disclose relevant information in discovery—are obligations that he took on willingly.[9] The Court finds it particularly egregious for a plaintiff to sue a defendant for millions of dollars and then systematically deprive that defendant of the information necessary for their defense. A plaintiff cannot hope to simply run out the clock and get to trial without engaging in discovery. Allowing such a strategy to bear fruit would be fundamentally unjust. And engaging in that strategy is the very essence of bad faith. If Mr. Pensinger brought this suit before he was ready to proceed, that is his responsibility—not the Court's, and not Ms. Minelli's. Accordingly, the Court finds that Mr. Pensinger's conduct justifies the dismissal of his pleadings.

### C. Based on the circumstances and history of this case, the Court concludes that no lesser sanction is available that would redress Mr. Pensinger's transgressions.

Before the Court imposes such a severe sanction, it is obligated to consider whether a lesser sanction would suffice. *Webb*, 146 F.3d at 971. The Court has considered monetary sanctions, an

---

[8] The Court is also troubled by Mr. Pensinger's continued insistence on casting aspersions on Ms. Minelli, her family, and her lawyer by insinuating without evidence that they have engaged in criminal conduct to thwart his claims. The Court has twice struck portions of Mr. Pensinger's pleadings for making such accusations and explained to him why those accusations were inappropriate. *See* Min. Order, Feb. 16, 2023; Min. Order, Feb. 23, 2023. The Court is aware that litigation sometimes turns petty. That is the inevitable result of a high-stakes adversarial system. Nevertheless, the Court does not appreciate Mr. Pensinger's choice to step over the same line two times.

[9] Nor is Mr. Pensinger a stranger to litigation. He and Ms. Minelli engaged in a suit in the D.C. Superior Court over their mutual requests for civil protection orders. ECF 27-1 at 13. He is apparently involved in another such suit now. ECF 81 at 5. In addition, Mr. Pensinger has an appeal pending before the D.C. Court of Appeals in a suit against Georgetown University. *See* DCCA 22-cv-466; *see also WMATA*, 776 F.3d at 8 ("The totality of the circumstances when reviewing discovery sanctions can include events which did not occur in the case proper but occurred in other cases and are, by their nature, relevant to the pending controversy.").

15

additional adverse instruction, restrictions on the admissibility of evidence, and the possibility of deeming Ms. Minelli's requests for admissions admitted. As for monetary sanctions, on February 7, 2023, Mr. Pensinger emailed the Court a sworn declaration that he is not in a position to pay such sanctions. To be clear, the Court does not believe that the prejudice stemming from Mr. Pensinger's failures would be cured merely by reimbursing Ms. Minelli her expenses. But even assuming that reimbursement would suffice, in this case a monetary sanction would do nothing to make Ms. Minelli whole because she would not be able to collect on the judgment. Nor would an uncollectable monetary sanction do anything to deter Mr. Pensinger's future conduct.

As for the possibility of issuing an additional adverse instruction, the Court concludes such a sanction would be inappropriate for two reasons. First, the Court already imposed such a sanction earlier in this case; there is no reason to believe it would deter further sanctionable conduct when it failed to do so the first time. Second, having already decided to issue one adverse instruction, which by its nature would affect the jury's understanding of a large cross-section of evidence in the case, the Court feels that crafting additional instructions would risk confusing the jury or, worse, turning an eventual trial into a farse. Justice is not served by holding a trial based on a false or misleadingly incomplete account of real-world events. Any sanction involving the inadmissibility of late-disclosed evidence carries that same risk.

Finally, regarding the possibility of deeming Ms. Minelli's request for admissions admitted, the Court must be cautious to avoid a scenario where "alternative sanctions ordered in lieu of dismissal . . . effectively amount to a default judgment." *Davis v. D.C. Child & Fam. Servs. Agency*, 304 F.R.D. 51, 62 (D.D.C. 2014). Here, the Court has reviewed the request for admissions and determined that it could not craft a sanction that has any teeth without doing exactly that. In

short, neither Party has suggested any sanction, short of dismissal, that the Court feels confident would remedy Mr. Pensinger's conduct, let alone deter future transgressions.

There is another problem with any sanction short of dismissing Mr. Pensinger's pleadings. At this point, Mr. Pensinger has delayed his obligations long enough that any disclosure of the wrongfully withheld information would almost certainly be accompanied by an extension of the discovery deadlines, so that Ms. Minelli is able to process the new information. But, as discussed above, the Court has concluded that Mr. Pensinger's omissions were intended to delay the proceedings—an attempted end-around to circumvent the Court's repeated statements that it would not grant any extensions absent the Parties' consent. In other words, any lesser sanction would risk rewarding Mr. Pensinger's strategy of delay. Moreover, any extension of discovery would impose yet more costs on Ms. Minelli, effectively punishing her for Mr. Pensinger's wrongdoing.

Thus, every sanction the Court has contemplated has two problems: first, it is either insufficient to remedy the misconduct or risks turning the trial into a sham; and second, it would result in Mr. Pensinger's delay tactics being rewarded with precisely what he has been seeking for months—a delay. Accordingly, after careful consideration of the alternatives, the Court concludes that there is no sanction short of dismissal that is appropriate under these circumstances.

### D. The Court declines to issue sanctions to either side for the events that took place at Mr. Pensinger's remote deposition.

Also before the Court is Mr. Pensinger's Motion for Sanctions, ECF 73, in which he requests that the Court sanction Ms. Minelli for her lawyer's failure to make reasonable accommodations at his deposition on February 9, 2023, and for Defense counsel's decision to prematurely terminate the deposition. The Court agrees with Mr. Pensinger that Defense counsel should have arranged for accommodations at the deposition, per the promises he made at the hearing on January 5, 2023. The Court also agrees that the better course would have been for

Defense counsel to contact the Court (again) rather than to terminate the deposition. Nonetheless, the Court does not detect any willfulness in those failures. Mr. Pensinger's accommodation request was brought up during a telephonic hearing. It does not appear that Mr. Pensinger followed up with Defense counsel to discuss his needed accommodations at any point between the hearing and the deposition. The Court finds that Defense counsel's failure to remember Mr. Pensinger's accommodations was understandable under the circumstances—although Mr. Pensinger was certainly within his rights to demand those accommodations once he arrived on the scene. As for the decision to terminate the deposition, the Court observes that Mr. Pensinger was being intransigent at the time—refusing to answer what was effectively the first substantive question that Defense counsel had had the opportunity to ask in the entire litigation. The Court can empathize with Defense counsel's frustration. The Parties would have been better off contacting the Court, but the Court does not find the failure to do so to be a sanctionable offense.

The Court also considers Mr. Pensinger's behavior in context. Although the Court has noted that Mr. Pensinger's refusal to answer Defense counsel's question was part of a pattern of resistance to disclosure, the Court recognizes he had a legitimate complaint about the conditions of his deposition, and thus declines to treat his conduct at his deposition as a sanctionable offense on its own.

## IV.    CONCLUSION

The Court DENIES Mr. Pensinger's Motion for Sanctions, ECF 73, and GRANTS Ms. Minelli's Motion for Sanctions, ECF 74. As sanction for his intentional strategy of delay and obfuscation, the Court DISMISSES Mr. Pensinger's Complaint with prejudice. Ms. Minelli is instructed to submit a final report of the expenses incurred due to Mr. Pensinger's sanctioned conduct (not including the expenses incurred at his deposition) and submit it to the Court in due

course. Mr. Pensinger will be given an opportunity to respond to that report. As always, the Court will entertain any joint requests for mediation or settlement.

A separate Order accompanies this Opinion.

**SO ORDERED.**

DATE: March 14, 2023

_____
Jia M. Cobb
U.S. District Court Judge